BILL KRUSE, d/b/a Kruse Auction Company, Plaintiff-Appellee and Cross-Appellant, v. VIRGIL KUNTZ, Defendant-Appellant and Cross-Appellee.

Fourth District    No. 4—95—0689

Opinion filed July 11, 1996.—Modified on denial of rehearing June 24, 1997.

Jack C. Vieley, of Peoria, for appellant.

W. Loren Thomson and Melissa McGrath, both of Thomson & Weintraub, of Bloomington, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Virgil Kuntz appeals the trial court's judgment awarding plaintiff Bill Kruse, d/b/a Kruse Auction House, $16,474 for the sale of farm equipment to Kuntz, as well as attorney fees. Kruse cross-appeals the trial court's denial of prejudgment interest. We affirm in part, reverse in part, and remand.

In December 1993, Kruse conducted an auction sale at which Kuntz was the highest bidder for farm equipment. Kuntz bid $106,901.50 for the equipment and paid that amount with a check drawn on his account at Busey Bank in LeRoy, Illinois. The check was returned for insufficient funds. In January 1994, Kuntz signed a written statement whereby he agreed to pay Kruse the full amount due for the equipment by February 1, 1994, plus interest, damages, and attorney fees. Although Kuntz made partial payments, he failed to pay the full amount by the stated date. Kruse filed suit, seeking full recovery of the amount owed plus court costs, attorney fees, and prejudgment interest. Kuntz filed a counterclaim seeking rescission of the auction sale contract on the ground of mutual mistake. He alleged the parties had entered into the contract on the mistaken belief Busey Bank had made a verbal loan commitment to Kuntz and would honor a check drawn in excess of the amount in his account. Kruse also filed a third-party complaint against Busey Bank, which was later dismissed.

In August 1994, Kruse filed a motion for summary judgment. Kuntz then filed a cross-motion for summary judgment. In February 1995, the trial court granted Kruse's motion for summary judgment and denied Kuntz' motion for summary judgment. Kruse filed a mo-

tion to vacate the judgment and modify the amount of the judgment. The trial court granted the motion, finding Kuntz had paid most of the debt already. The trial court entered a modified judgment awarding Kruse $11,861.50 for the remaining unpaid debt, $4,112.50 in attorney fees and costs, plus a $500 penalty, for a total of $16,474. Kuntz filed a post-trial motion requesting the trial court reverse its decision on the grounds Kruse's claim based on the auction sale contract was barred by the statement Kuntz signed in January 1994. The motion also asked the trial court to deny Kruse attorney fees on the basis Kruse's attorney had failed to submit his time records to the court. Kruse in turn filed a post-trial motion seeking an award of prejudgment interest to him. The trial court denied the motions of both parties, and now both parties appeal.

Kuntz first asserts the trial court erred in granting summary judgment for Kruse on the unpaid amount of the auction sale contract. Kuntz contends Kruse's complaint sought to recover only on the auction sale contract, but Illinois law bars this claim because the statement signed by him in January 1994 was a "settlement agreement." Kruse appears to also view the statement as a "settlement agreement," but asserts Illinois law allows the aggrieved party to a settlement agreement to elect to proceed on the settlement agreement *or* the original contract. That the parties take different positions in this regard is understandable given Illinois courts have made contradictory statements regarding the issue.

■ Two separate lines of cases exist in Illinois, each without comment on the other, on the issue of the effect of a settlement agreement on the rights of an aggrieved party to bring suit under the original contract rather than the settlement agreement. One line of cases declares, in the absence of mistake or fraud, a settlement agreement is conclusive on the parties as to all matters therein. A valid compromise is in the nature of a contract and operates as a merger of all included claims, as well as a bar thereto. After compromising disputed claims, a plaintiff's only remedy is based upon the settlement contract itself. See, *e.g., Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 570, 546 N.E.2d 810, 815 (1989); *In re Marriage of Wilder*, 122 Ill. App. 3d 338, 357-58, 461 N.E.2d 447, 460 (1983). This line can be traced back to the declaration of our supreme court in *Bingham v. Browning*, 197 Ill. 122, 136, 64 N.E. 317, 321 (1902), quoting *Farmers' Bank v. Blair*, 44 Barb. 641, 652-53 (N.Y. App. Div. 1865):

> " 'Compromises are to be encouraged because they promote peace, and when there is no fraud and the parties meet on equal terms and adjust their differences, the court will not overlook the compromise but will hold the parties concluded by the settlement.' "

The other line of cases, however, declares if a party to a settlement agreement breaches and the breach goes to an essential element of the compromise agreement and in effect amounts to a refusal to perform or an abandonment, the other party may elect to regard the agreement as rescinded and proceed on the original cause of action, or may sue on the agreement for the breach. See, *e.g.*, *Berry v. Oak Park Hospital*, 256 Ill. App. 3d 11, 19, 628 N.E.2d 1159, 1165 (1993). When the citations for this proposition are traced back, the rule seems to have been derived by implication from *Trapkus v. Edstrom's, Inc.*, 140 Ill. App. 3d 720, 725, 489 N.E.2d 340, 345 (1986). *Trapkus* did not involve a settlement agreement, but the court there stated the general rule a contract may be rescinded where a material breach has occurred. One other case also concluded breach of a settlement agreement allows the aggrieved party to elect to sue under either the settlement agreement or the original contract, but that case cited as support cases from other jurisdictions only. *Hopkins v. Holt*, 194 Ill. App. 3d 788, 796-97, 551 N.E.2d 400, 406 (1990).

■ Here, Kuntz asserts the trial court should have dismissed Kruse's complaint because his claim on the auction sale contract was barred by the "settlement agreement." Kruse responds he had the option of electing to proceed on either the "settlement agreement" or the auction sale contract. Each party cites only to that line of cases supporting its position. We could join with one line of cases over the other, but we believe that is unnecessary. A reviewing court is not bound by reasons given by the trial court for its judgment, and a trial court judgment may be affirmed upon any ground warranted in the record regardless of whether it was relied on by the trial court. *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 457 N.E.2d 9 (1983).

Here, what the parties each refer to as the "settlement agreement" appears to be no such thing. The untitled typed document states in its entirety:

"January 21, 1994

To whom it may concern:
On this day January 21, 1994[,] I Virgil Kuntz agree to pay Bill Kruse Auction by Feb 1, 1994[,] the sum of $106,901.50 plus All interest on money borrowed by Bill Kruse at the First National Bank, attorney fee up to and to Include [*sic*] Feb 1, 1994, and Thirty Five Hundred dollars for my trouble in this matter.
Virgil Kuntz
/s/ Virgil Kuntz
Bill Kruse
/s/ Bill Kruse"

There is nothing in this document indicating either (1) Kruse was surrendering his rights under the auction sale contract, or (2) this document was in any way a substitute for, or compromise of, the auction sale contract. Instead, Kuntz was merely reaffirming his obligation to pay Kruse the money owed, as well as declaring he would pay Kruse damages. Indeed, because the amount involved in the auction sale contract was liquidated, Kruse had little, if any, incentive to compromise his claim by agreeing to a "settlement agreement." Instead, it is implied by the very existence of the statement itself that Kruse would merely *suspend* filing suit or taking other action on the auction sale contract based on the promise by Kuntz he would pay his debt promptly as well as compensate Kruse for the inconvenience caused to him.

Although Kuntz does not expressly argue the signed statement was not a "settlement agreement," the fact he believed he still had rights under the auction sale contract demonstrates he did not consider the signed statement an agreement in any way compromising or superseding his rights under the auction sale contract. Because the signed statement was not a conclusive "settlement agreement," Kruse could properly file suit against Kuntz based on the auction sale contract.

Kruse gave Kuntz additional time to pay his debt in reliance on Kuntz' promise he would do so within that time. This Kuntz failed to do, and so Kruse brought suit. Kuntz now would have us hold Kruse's own leniency and generosity against him. We decline. The trial court did not err in granting summary judgment for Kruse on his complaint based on the auction sale contract. The judgment against Kuntz for $11,861.50 as his remaining unpaid debt under the auction sale contract was proper.

■ Kuntz next asserts the trial court erred in awarding Kruse attorney fees. Kuntz contends Kruse's attorney failed to submit original copies of his time records in requesting attorney fees. This argument is without merit. The burden of proof is on the attorney to establish the value of his services. *In re Estate of Callahan*, 144 Ill. 2d 32, 43, 578 N.E.2d 985, 990 (1991). An appropriate fee consists of reasonable charges for reasonable services. To justify a fee, more must be presented than a mere compilation of hours multiplied by a fixed hourly rate or bills issued to the client, since this type of data, without more, does not provide the court with sufficient information as to their reasonableness—a matter which cannot be determined on the basis of conjecture or on the opinion or conclusions of the attorney seeking fees. Rather, the petition for fees must specify the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor.

Because of the importance of these factors, it is incumbent upon the attorney requesting fees to present detailed records maintained during the course of the litigation containing facts and computations upon which the charges are predicated. *LaHood v. Couri*, 236 Ill. App. 3d 641, 649, 603 N.E.2d 1165, 1170-71 (1992). An attorney need not maintain detailed time records contemporaneously with the litigation, however, if the attorney presents sufficient evidence from which the trial court can determine a reasonable fee for the services. *Anderson v. Anchor Organization for Health Maintenance*, 274 Ill. App. 3d 1001, 654 N.E.2d 675 (1995). To properly determine the reasonable value of an attorney's services, the following factors should be considered: the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client. A trial court has broad discretionary powers in awarding attorney fees and its decision will not be reversed on appeal unless the court abused its discretion. *Callahan*, 144 Ill. 2d at 43-44, 578 N.E.2d at 990.

Here, Kruse's attorney presented the trial court with documents detailing the work he performed in Kruse's behalf. This account of his services specified the particular services performed, by whom they were performed, the time expended thereon, and the hourly rate charged. This was sufficient for the trial court to determine whether the requested fees were reasonable. Kruse's attorney need not have also presented the trial court with copies of the original time records when these records would have only duplicated the information already presented to the trial court.

Kuntz also asserts the trial court abused its discretion in awarding as much as it did in attorney fees because, he contends, some of the fees involved "collateral" issues concerning the counterclaim and third-party complaint filed by Kuntz. However, it was within the trial court's discretion to consider none of these attorney fees would have been necessitated if not for Kuntz' actions in this matter. The trial court did not abuse its discretion in awarding Kruse $4,112.50 in attorney fees.

■ We turn now to Kruse's cross-appeal. Kruse asserts the trial court erred in failing to award him prejudgment interest on the debt owed by Kuntz. Absent an express agreement between the parties, allowance of prejudgment interest on written instruments is available under section 2 of the Interest Act (815 ILCS 205/2 (West 1992)) if the amount due is a fixed amount or easily computed. *Bank of*

*Chicago v. Park National Bank*, 266 Ill. App. 3d 890, 640 N.E.2d 1288 (1994).

■ Kruse argues prejudgment interest was permissible here both because the check was a written instrument *and* because Kuntz withheld the money by an unreasonable and vexatious delay. We need not decide, however, whether Kuntz's actions amounted to an unreasonable and vexatious delay, because prejudgment interest was available on the other basis argued by Kruse. The note signed by Kuntz constituted a written instrument because it involved a debtor-creditor relationship and contained a specific due date. *Reserve Insurance Co. v. General Insurance Co. of America*, 77 Ill. App. 3d 272, 282-83, 395 N.E.2d 933, 940 (1979). Also, the amount due was fixed or easily calculated, so prejudgment interest was available under the Interest Act. In the absence of any suggestion or reason from the trial court why prejudgment interest was denied, we find the denial was improper. The trial court must evaluate the evidence to decide whether there has been unreasonable or vexatious delay in order to award prejudgment interest for that reason. However, when there is an instrument in writing and there are no factual disputes to be resolved, the trial court has no discretion to exercise. The prevailing party is entitled to receive interest. We find the trial court's refusal to award Kruse prejudgment interest on the remaining $11,861.50 debt owed by Kuntz was error.

The judgment of the trial court is affirmed on the issue of the grant of summary judgment to plaintiff and the issue of attorney fees. The judgment is reversed on the denial of prejudgment interest, and this cause is remanded to the trial court for the award of prejudgment interest in accordance with the Interest Act.

Affirmed in part and reversed in part; cause remanded.

COOK and GREEN, JJ., concur.